**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lorraine Yazzie,<br><br>             Plaintiff,<br><br>v.<br><br>Office of Navajo and Hopi Indian Relocation,<br><br>             Defendant. | No. CV-23-08119-PCT-DMF<br><br>**ORDER** |

This matter is before the Court on Plaintiff Lorraine Yazzie's Motion for Summary Judgment (Docs. 17, 18) and Defendant Office of Navajo and Hopi Indian Relocation's ("ONHIR") Cross-Motion for Summary Judgment (Docs. 21, 22). Defendant ONHIR filed a response to Plaintiff's Motion for Summary Judgment. (Docs. 21, 22) Plaintiff filed a reply in support of her Motion for Summary Judgment and a response to Defendant ONHIR's Cross-Motion for Summary Judgment. (Doc. 25) Defendant ONHIR filed a reply in support of its Cross-Motion for Summary Judgment. (Doc. 30) All parties consent to proceeding before a United States Magistrate Judge in this matter. (Docs. 6, 11, 15, 16)

For the reasons set forth below, Plaintiff's Motion for Summary Judgment will be granted (Doc. 17) as set forth herein, ONHIR's Cross-Motion for Summary Judgment will be denied (Doc. 21), and the June 19, 2017, final decision of ONHIR will be reversed and remanded for further proceedings.[1]

---

[1] Because it would not assist in resolution of the instant issues, the Court finds that the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1    **I.      BACKGROUND**

2         **A.  The Navajo-Hopi Settlement Act**

3         The Navajo-Hopi Settlement Act ("Settlement Act"), Pub. L. No. 93-531, 88 Stat.

4    1716 (1974), authorized a court-ordered partition of land occupied by Navajo and Hopi

5    residents and created the Navajo Partitioned Lands ("NPL") and the Hopi Partitioned

6    Lands ("HPL"). *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121-

7    22 (9th Cir. 1989). The Settlement Act also created ONHIR, which provides services and

8    benefits for relocation of individuals who resided on land that was allocated to the other

9    tribe. *See Stago v. Office of Navajo & Hopi Indian Relocation*, No. CV-20-08118-PHX-

10   SPL, 562 F.Supp.3d 95, 100 (D. Ariz. 2021) (citing *Bedoni*, 878 F.2d at 1121-22). A

11   Navajo applicant for relocation benefits under the Settlement Act is eligible if she was a

12   legal resident of the HPL as of December 22, 1974, became a head of household by July 7,

13   1986, and remained a resident of the HPL at the time she became a head of household. *Id.*

14   at 101; 25 C.F.R. § 700.147(a), (e). A single or married person may be head of household;

15   a household may be a single person or "[a] group of two or more persons living together at

16   a specific location who form a unit of permanent and domestic character." 25 C.F.R. §

17   700.69(a)(1). The head of household is also the "individual who speaks on behalf of the

18   members of the household and who is designated by the household members to act as

19   such." 25 C.F.R. § 700.69(b). A single person may also qualify as head of household if,

20   while living "on land partitioned to the Tribe of which he/she is not a member," such person

21   "actually maintained and supported him/herself[.]" 25 C.F.R. § 700.69(a)(2). Although

22   there is no set rule for the income threshold to be recognized as a single head of household,

23   ONHIR has "recognized that an applicant who earned at least $1,300 per year can make a

24   prima facie showing of self-supporting status." *Ambrose v. Office of Navajo & Hopi Indian*

25   *Relocation*, No. CV-21-08133-PCT-DLR, 2022 WL 3921115, at *3 (D. Ariz. Aug. 31,

26   2022).

27        The applicant bears the burden to prove both HPL residence and head of household

28   status. 25 C.F.R. § 700.147(b).

### B.  ONHIR Procedural History

Plaintiff Lorraine Yazzie ("Plaintiff") was born in 1956[2] and is an enrolled member of the Navajo Nation. (Doc. 12 at 4) On April 10, 2009, Plaintiff applied for relocation benefits under the Settlement Act. (*Id*. at 22-28)[3] Plaintiff's 2009 application stated that on December 22, 1974, Plaintiff was living "[s]even miles southwest of Dennebito trading post on the 'HPL'" and that Plaintiff "was working on and off outside the HPL but always came home to [her] parents." (*Id*. at 24) Plaintiff stated on her application that she had been a member of the Hard Rock Chapter of the Navajo Nation since 1969. (*Id*. at 22) Plaintiff's application also stated that Plaintiff moved from the HPL to Flagstaff, Arizona in May 1987 because her parents were asked to relocate. (*Id*. at 25)

In support of her application, Plaintiff provided a Social Security earnings statement. (*Id*. at 11-13) The ONHIR administrative record for Plaintiff also included various other documents, such as a birth certificate for Plaintiff's first child, born in 1973; a prior ONHIR decision, *In the Matter of the Application of Dick Yazzie* (November 2011); documents from the relocation benefits proceedings for Plaintiff's mother, Marjorie Begay[4]; and September 2012 interview notes for Plaintiff. (*Id*. at 15-17, 30-44) In her interview notes, Plaintiff stated that she went to high school in Utah, was with her mother for the birth of Plaintiff's first child in October 1973, then went to Mississippi with her baby for about six months in 1974. (*Id*. at 42-44) After returning to Arizona later in 1974, Plaintiff went back and forth between staying at her mother's home and staying for 2-3 days at her boyfriend's home; in 1975, Plaintiff went to Utah for a few months for work. (*Id*. at 43-44)

On January 30, 2013, ONHIR denied Plaintiff's April 10, 2009, application,

---

[2] Plaintiff's application for relocation benefits states that Plaintiff was born in 1959, but Plaintiff confirmed at her administrative appeal hearing that she was actually born in 1956. (Doc. 12 at 91)

[3] The ONHIR "Form for Recording Eligibility-Related Contact" reflects that ONHIR Employee Colleen Tso spoke with Plaintiff as part of Plaintiff's application process. (Doc. 12 at 17)

[4] Plaintiff's mother is also referred to as Margie Begay in record documents. Plaintiff's mother applied for relocation benefits in 1978 and was relocated in 1989. (Doc. 12 at 31)

determining that there was insufficient evidence that Plaintiff was an HPL resident on December 22, 1974. (*Id.* at 46-50) ONHIR determined that Plaintiff was enumerated as an NPL resident while residing with her boyfriend Larry Yazzie, her child Ernest, and Larry's family. (*Id.*) Although Plaintiff's parents were enumerated as HPL residents, Plaintiff's mother was interviewed on March 20, 1975, and the HPL Enumeration did not include Plaintiff as a resident of her parents' HPL site. (*Id.*)

On March 25, 2013, Plaintiff sent ONHIR a letter timely appealing ONHIR's denial of her April 2009 application for relocation benefits. (*Id.* at 52-53) In August 2013, ONHIR issued a notice of a pre-hearing conference for November 22, 2013, to determine whether Plaintiff would represent herself or be represented by counsel during the appeal, as well as for Plaintiff "to explain why [she] believe[d she] should be certified as eligible for Relocation Benefits and what documents or testimony (witnesses) will support [Plaintiff's] position." (*Id.* at 60-65) The notice also stated that Plaintiff should bring "any documents which [she] believe[d] are relevant to the issue of [her] eligibility for Relocation Benefits and which [Plaintiff] ha[d] not previously submitted to ONHIR." (*Id.* at 61)

On November 18, 2013, counsel for Plaintiff entered a notice of appearance. (*Id.* at 69-70) In April 2016, ONHIR issued a notice of hearing for March 24, 2017. (*Id.* at 72) The notice stated that "[a]ll parties are invited to attend and present testimony and documentation in support of their respective positions" and that "[a]ll witness lists and exhibits are to be exchanged no later than two (2) weeks prior to the scheduled hearing date." (*Id.*) On March 16, 2017, counsel for Plaintiff and ONHIR agreed by email that Plaintiff's sister Evelyn could be substituted as a witness in place of another of Plaintiff's siblings. (*Id.* at 74) On March 24, 2017, Independent Hearing Officer ("IHO") Harold Merkow held an administrative appeal hearing, during which Plaintiff was represented by counsel. (*Id.* at 77-103) Plaintiff, her stepfather Howard Begay, her sister Evelyn Begaye, and her mother Margie Begay testified at the hearing, and ONHIR did not call any witnesses. (*Id.*)

On April 28, 2017, ONHIR submitted its post-hearing brief to the IHO. (*Id.* at 109-

25) On May 16, 2017, Plaintiff submitted her post-hearing brief. (*Id*. at 129-41) On June 19, 2017, the IHO upheld the denial of Plaintiff's application for relocation benefits. (*Id*. at 143-48) The IHO determined that Plaintiff was "not a credible witness about her relationship with Larry Yazzie or her residence during 1974 and 1975." (*Id*. at 145) The IHO determined that Plaintiff's stepfather Howard Begay was "not a credible witness about [Plaintiff's] relationship with Larry Yazzie or about the amount of time [Plaintiff] stayed at the Howard Begay house in Hardrock during 1974 and 1975." (*Id*. at 145-46) The IHO also determined that Plaintiff's sister Evelyn was not a credible witness "[t]o the extent that Evelyn Begaye's testimony is to corroborate [Plaintiff's] and her stepfather's testimony about applicant's relationship with Larry Yazzie[.]" (*Id*. at 146) The IHO concluded that Plaintiff was not a legal resident of the HPL as of December 22, 1974, because she was enumerated by the BIA at Larry Yazzie's NPL home. (*Id*. at 146-48)

On July 21, 2017, ONHIR entered Final Agency Action affirming the IHO's decision denying Plaintiff's application. (*Id*. at 154) Plaintiff subsequently filed the Complaint in this matter, seeking judicial review of ONHIR's decision that she is not eligible for relocation benefits under the Settlement Act. (Doc. 1)

## II.   STANDARD OF REVIEW

The Administrative Procedure Act ("APA") governs judicial review of an IHO's decision under the Settlement Act. *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995). Under Fed. R. Civ. P. 56, summary judgment is appropriate when (1) the movant shows that there is no genuine dispute as to any material fact, and (2) after viewing the evidence most favorably to the non-movant, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When the Court reviews agency action pursuant to the APA, however, the administrative agency is the fact-finder, and the Court does not have disputed facts to resolve. *Occidental Engineering Co. v. Immigration & Naturalization Service.*, 753 F.2d 766, 769 (9th Cir. 1985). Instead, the Court must determine whether "as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id*. As such,

summary judgment is appropriate "for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Id.*

Pursuant to the APA, the Court may set aside an administrative agency's decision if the decision was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni*, 878 F.2d at 1122 (citing 5 U.S.C. § 706(2)(A), (2)(E), and *Walker v. Navajo-Hopi Indian Relocation Comm'n*, 728 F.2d 1276, 1278 (9th Cir. 1984)). The Court's scope of review is narrow, and the Court may not "substitute its judgment for that of the agency." *Hopi Tribe*, 46 F.3d at 914 (internal citations omitted).

Substantial evidence requires "more than a mere scintilla but less than a preponderance" and is "such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). Substantial evidence is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Akee v. Office of Navajo & Hopi Indian Relocation*, 907 F.Supp. 315, 318 (D. Ariz. 1995) (internal citation omitted). The IHO may "draw inferences logically flowing from the evidence[,]" and if the "evidence is susceptible of more than one rational interpretation," the Court must uphold the IHO's decision. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

An IHO's decision will meet the arbitrary and capricious standard of review if "the agency examine[d] the relevant data and articulate[d] a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Hopi Tribe*, 46 F.3d at 914 (internal citations omitted). If the IHO "considered the relevant factors and articulated a rational connection between the facts found and the choices made[,]" the Court must affirm the IHO's decision. *Ranchers Cattlemen Action Legal Fund United Stockgrowers of American v. U.S. Dept. of Agr.*, 499 F.3d 1108, 1115 (9th Cir. 2007) (citing *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1206 (9th Cir. 2004)). The IHO's decision will be arbitrary and capricious if the IHO "entirely failed to consider an important

1    aspect of the problem, offered an explanation for its decision that runs counter to the

2    evidence before the agency, or is so implausible that it could not be ascribed to a difference

3    in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v.*

4    *State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

5    **III.    PENDING MOTIONS FOR SUMMARY JUDGMENT**

6        **A.  Extra-Record Exhibits**

7        To her motion for summary judgment, Plaintiff attached four extra-record exhibits:

8    Exhibit I, an IHO hearing decision in *Edison Bahe*, Hearing No. 89-36 (1989) (Doc. 17-1);

9    Exhibit II, "Enumeration Methodology" (Doc. 17-2); Exhibit III, an IHO hearing decision

10   in *Alice Labahe*, Hearing No. 94-35 (Doc. 17-3); and Exhibit IV, an IHO hearing decision

11   in *Dallas Yazzie, Sr.*, Hearing No. 88-52 (October 1990) (Doc. 17-4).

12       ONHIR argues that the Court should not consider Exhibits I, III, and IV attached to

13   Plaintiff's motion for summary judgment.[5] (Doc. 21 at 10-12; *see also* Doc. 30 at 6-9)

14   ONHIR asserts that Exhibits I, III, and IV were not cited in Plaintiff's post-hearing brief in

15   her administrative appeal and that the IHO's prior decisions are distinguishable from

16   Plaintiff's case. (*Id.*) Although Plaintiff argues that the IHO's prior decisions demonstrate

17   that the Enumeration is not conclusive as to eligibility for benefits, ONHIR argues that the

18   Enumeration is nevertheless *prima facie* evidence of residency. (*Id.* at 11-12)

19       This Court generally will not consider "extra-record" exhibits. *Tso v. Office of*

20   *Navajo & Hopi Indian Relocation*, No. CV17-08183-PCT-JJT, 2019 WL 1877360, at \*7

21   (D. Ariz. Apr. 26, 2019). Four circumstances may permit the Court's consideration of

22   extra-record exhibits: "(1) if admission is necessary to determine whether the agency has

23   considered all relevant factors and has explained its decision, (2) if the agency has relied

24   on documents not in the record, (3) when supplementing the record is necessary to explain

25   ─────────────

26   [5] In its response to Plaintiff's motion for summary judgment and cross-motion for summary judgment, ONHIR incorrectly asserts that Plaintiff did not attach the discussed exhibits to her motion for summary judgment or Complaint. (Doc. 21 at 11) ONHIR does not address

27   Exhibit II in its response to Plaintiff's motion for summary judgment and cross-motion for summary judgment. However, in its reply in support of its cross-motion for summary

28   judgment, ONHIR does recognize that in *Tso*, 2019 WL 1877360, at \*7, considered the Report and Plan included in Plaintiff's Exhibit II. (Doc. 30 at 7)

1   technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency

2   bad faith." *Id*. (quoting *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)).

3       Additionally, arguments not raised during administrative proceedings may be

4   waived. *Bahe v. Office of Navajo & Hopi Indian Relocation*, No. CV-17-08016-PCT-DLR,

5   2017 WL 6618872, at *6 (D. Ariz. Dec. 28, 2017) (argument waived for failure to be raised

6   during administrative proceedings).

7       *1.  Exhibits I, III, and IV*

8       To her motion for summary judgment, Plaintiff attached three prior IHO decisions

9   as Exhibits I, III, and IV: Exhibit I, an IHO hearing decision in *Edison Bahe*, Hearing No.

10   89-36 (1989) (Doc. 17-1); Exhibit III, an IHO hearing decision in *Alice Labahe*, Hearing

11   No. 94-35[6] (Doc. 17-3); and Exhibit IV, an IHO hearing decision in *Dallas Yazzie, Sr.*,

12   Hearing No. 88-52 (October 1990) (Doc. 17-4). Referring to Exhibits I, III, and IV,

13   Plaintiff argues that the IHO previously certified applicants for benefits despite applicants

14   not being included in the HPL Enumeration. (Doc. 17 at 9-12) Here, Plaintiff asserts that

15   the IHO found the Enumeration to be conclusive evidence and did not consider

16   contradicting testimony, despite previously finding that witness "testimony overcame the

17   limitations of the Enumeration." (Doc. 25 at 7-9) As such, Plaintiff asserts that Exhibits I,

18   III, and IV should be considered to determine whether ONHIR followed its own precedent

19   or explained its deviation from precedent. (*Id*. at 4-6)

20       Plaintiff's Exhibits I, III, and IV are dated between 1989 and 1995. (Docs. 17-1, 17-

21   3, 17-4) Exhibits I, III, and IV existed at the time of the ONHIR administrative proceedings,

22   conducted between 2009 and 2017, yet Plaintiff did not present Exhibits I, III, and IV to

23   the IHO during administrative proceedings. Although this "Court may consider prior

24   ONHIR decisions to determine whether a decision is arbitrary and capricious," *Stago*, 562

25   F.Supp.3d at 102, "previous decisions only serve this purpose if they carry precedential

26   value in the case at hand." *Whitehair v. Office of Navajo & Hopi Indian Relocation*, No.

27   _____

28   [6] The decision in Exhibit III was not dated. The hearing for the decision was conducted in October 1994, and the decision was stamped received by the Navajo Hopi Legal Services Project in February 1995. (Doc. 17-3 at 2)

CV-17-08278-PCT-DGC, 2018 WL 6418665, at *3 (D. Ariz. Dec. 6, 2018). Prior decisions may be considered if they "set forth ONHIR policy or if they involve facts indistinguishable from the instant case." *Stago*, 562 F.Supp.3d at 102.

The three prior IHO decisions in Exhibits I, III, and IV include only a limited summary of the facts of record in each respective relocation case. Moreover, the decisions in Exhibits I, III, and IV are not factually indistinguishable from Plaintiff's case. In Exhibit I, the applicant asserted that he and his family maintained a summer home on the HPL and a winter home on the NPL, but applicant was enumerated at the winter home on the NPL. (Doc. 17-1 at 2-3) The IHO found that the NPL Enumeration was not determinative, because it appeared from evidence presented at the IHO hearing that the applicant had also maintained a summer home on the HPL during the relevant time. (*Id.* at 4-6) In Exhibit III, the applicant was enumerated on the NPL, yet the applicant testified that she was never interviewed for the BIA Enumeration and had been living on the HPL during the relevant time. (Doc. 17-3 at 2-6) The IHO found that the applicant's testimony had rebutted the Enumeration, such that the uncorroborated Enumeration could not serve as a basis to deny relocation benefits. (*Id.* at 5-6) In Exhibit IV, the applicant was enumerated on the NPL and interviewed for the Enumeration, which the IHO found was *prima facie* evidence of NPL residence. (Doc. 17-4 at 5) Although the applicant's wife and children resided on the NPL, the IHO found that the applicant had maintained sufficient contacts with an HPL home to be a legal resident of the HPL. (*Id.* at 4-6)

Plaintiff has not shown that the IHO decisions in Exhibits I, III, and IV have precedential value or "represent[] a settled course of adjudication and a general policy by which Defendant's exercise of discretion will be governed." *Stago*, 562 F.Supp.3d at 103; *see also Sands*, *v. Office of Navajo & Hopi Indian Relocation*, 2023 WL 8281705, at *3-4 (D. Ariz. Nov. 30, 2023); *Webb v. Office of Navajo & Hopi Indian Relocation*, 615 F.Supp.3d 1049, 1057 (D. Ariz. 2022). Accordingly, the Court will not supplement the record with Exhibits I, III, and IV.

1

2. *Exhibit II*

2

To her motion for summary judgment, Plaintiff also attached Exhibit II, an excerpt

3

from the 1981 *Navajo Hopi Indian Relocation Commission Report and Plan* (*"Report and*

4

*Plan"*) titled "Enumeration Methodology."[7] (Doc. 17-2) Plaintiff asserts that this Court has

5

previously considered the *Report and Plan* as a document created by ONHIR. (Doc. 25 at

6

6-7) (citing *Louise Ray v. Office of Navajo & Hopi Indian Relocation*, No. CV-22-08101-

7

PCT-SPL, 2023 WL 4761789, at *3 (D. Ariz. July 26, 2023), and *Tso*, 2019 WL 1877360,

8

at *8). ONHIR recognizes in its reply in support of its cross-motion for summary judgment

9

that in *Tso*, the Court "considered the 'Report and Plan' and 'Plan Update' because they

10

'helped to identify potential "holes" in the administrative record and informed the Court of

11

the factors used by the Agency in assessing an applicant's claim of being "temporarily

12

away" from the JUA.'" (Doc. 30 at 7) (citing *Tso*, 2019 WL 1877360, at *7-8.)

13

In *Tso*, this Court permitted Plaintiff to supplement the record with an excerpt from

14

the *Report and Plan* "to identify and plug holes in the administrative record." 2019 WL

15

1877360, at *8. The Court determined that the *Report and Plan* was created by ONHIR

16

and "note[d] that the agency may have considered these materials either directly or

17

indirectly in its decision denying Plaintiff relocation benefits." *Id*. (citing *Thompson v.*

18

*United States Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). Similarly, in *Ray*, this

19

Court permitted the plaintiff to supplement the record with a report from ONHIR's

20

predecessor agency, NHIRC, regarding Enumeration. 2023 WL 4761789, at *3. Although

21

the NHIRC Enumeration report was distinct from the BIA Enumeration, the Court in *Ray*

22

rejected ONHIR's argument that the NHIRC Enumeration should be excluded. *Id*. Instead,

23

the Court in *Ray* determined that the NHIRC and BIA Enumerations had the same purpose,

24

such that the NHIRC Enumeration could be considered as evidence even where the IHO

25

relied on the BIA Enumeration in his decision. *Id*. at 7, n.6. Further, the Ninth Circuit has

26

determined that the "whole administrative record" includes "all documents and materials

27

28

---

[7] The excerpt provided at Exhibit II is undated and does not reflect that the excerpt is from the *Report and Plan*. Plaintiff describes the excerpt in her motion for summary judgment. (Doc. 17 at 12)

directly or *indirectly* considered by agency decision-makers[,]" not merely "those documents that the *agency* has compiled and submitted as the administrative record." *Thompson*, 885 F.2d at 555 (internal quotations omitted). Because the *Report and Plan* excerpt can be characterized as a document considered indirectly by ONHIR, consideration of Exhibit II is appropriate in these proceedings.

**B.  IHO Decision**

In her motion for summary judgment, Plaintiff raises two issues for the Court's consideration: 1) whether the IHO's adverse credibility findings are based on substantial evidence where all witness testimony was found not credible regarding Plaintiff's relationship with her boyfriend and Plaintiff's residency on December 22, 1974, and 2) whether the IHO provided substantial evidence to support conclusions that the BIA's 1974-75 Enumeration was determinative of Plaintiff's residency on December 22, 1974, and that Plaintiff's conjugal relationship was close. (Doc. 17 at 3-4)

ONHIR asserts that Plaintiff has not met her burden to prove residency on the HPL on December 22, 1974, that the IHO did not rely solely on the Enumeration, and that substantial evidence supported the IHO's credibility findings. (Doc. 21 at 10-15) Because the parties do not dispute Plaintiff's head of household status on December 22, 1974, only HPL residence at that time is at issue in this appeal. (*See* Doc. 17 at 4)

*1.  Adverse Credibility Findings*

Plaintiff argues that the IHO did not provide substantial evidence to support his adverse credibility findings for the testimony of Plaintiff and Plaintiff's witnesses. (Doc. 17 at 5-9) Plaintiff asserts that the IHO "failed to individually address the testimony of [Plaintiff] and each of her three witnesses, and to weigh these individual testimonies for veracity." (*Id*. at 7) Instead, Plaintiff argues that the IHO relied exclusively on the Enumeration to find the witnesses non-credible, despite testimony contradicting the Enumeration. (*Id*. at 8-9) ONHIR argues that the IHO provided reasons beyond the Enumeration, including reasons related to Plaintiff's relationship with Larry Yazzie, and was not required to "explicitly highlight contradictions between the witnesses" due to "the

existence of contrary evidence in the record." (Doc. 21 at 13-15) ONHIR asserts that "'contrary evidence in the record' consisted of testimonial evidence regarding Plaintiff's and Larry Yazzie's years-long relationship and multiple children, in addition to the Enumeration." (*Id*. at 14)

Where the IHO discounted witness testimony, the IHO was required to provide "'specific, cogent reasons'" that were not "'based on speculation and conjecture.'" *Beam v. Office of Navajo & Hopi Indian Relocation*, No. CV-21-08149-PCT-SPL, 624 F.Supp.3d 1069, 1077 (D. Ariz. 2022) (quoting *Shire v. Ashcroft*, 388 F.3d 1288, 1295 (9th Cir. 2004)); *see also Tsosie v. Office of Navajo & Hopi Indian Relocation*, 771 Fed. Appx. 426, 426-27 (9th Cir. 2019) (conclusory statements insufficient for adverse credibility finding).

### a.  Plaintiff's Testimony

At the IHO hearing, Plaintiff testified that she completed high school up to her junior year in 1973. (Doc. 12 at 79-80) During her final two years of school, she lived in Brigham City, Utah, where she met the father of her first child, Larry Yazzie. (*Id*. at 80-81) After becoming pregnant by Larry Yazzie in 1973, Plaintiff stayed with her mother, Margie Begay, and her stepfather, Howard Begay. (*Id*. at 80-81) Plaintiff did not see Larry or stay with him after giving birth to her first child in October 1973. (*Id*. at 81) Plaintiff's first child was born in Fort Defiance because Plaintiff and her mother hitchhiked to find hospital transportation. (*Id*. at 81-82) Plaintiff's mother was with Plaintiff during the birth, and Plaintiff did not know where Larry was at the time. (*Id*. at 82) Following the birth, Plaintiff stayed with her mother and stepfather, and she did not see Larry for a month or two, until Larry and his mother came to see Plaintiff's first baby. (*Id*.)

In 1974, Plaintiff went to Mississippi with her first baby and Larry for training school. (*Id*. at 83) For four to five months in Mississippi, Plaintiff trained to become a welder and worked in a shipyard. (*Id*.) Larry left Plaintiff in Mississippi, so when Plaintiff's first baby got sick later in 1974, Plaintiff's stepfather sent her money to return home on a bus. (*Id*. at 84) After Plaintiff returned to stay with her mother and stepfather, Larry came by to see the first baby, and Plaintiff went to Larry's homesite for three or four days. (*Id*.

at 84-85) Plaintiff had a second child with Larry in June 1975. (*Id*. at 85) One of Plaintiff's aunts took Plaintiff to a hospital in Tuba City, and Larry did not come to the hospital. (*Id*.) After Plaintiff's second child was born in June 1975, Plaintiff went to Salt Lake City to find work with her second child and sister Helena. (*Id*. at 86) After working in Salt Lake City for four to five months, Plaintiff went back to her mother and stepfather's home in Teasyahto. (*Id*.) Plaintiff testified that her relationship with Larry Yazzie "wasn't good, so he mostly just came to see the kids[,]" and she did not see Larry after she returned from Utah. (*Id*. at 87) Plaintiff also testified that she was married to Larry in July 1973, that she and Larry obtained a marriage license in Chinle, and that Larry's name appeared on the birth certificate of her first child. (*Id*. at 87-88, 90) Plaintiff stated that although the BIA Enumerators listed Larry and Plaintiff as living in Hard Rock Chapter, Plaintiff was going "back and forth" to stay three or four days with Larry, and the BIA Enumerators were "doing Census count, or something," at the time Plaintiff was visiting Larry. (*Id*. at 88) Plaintiff acknowledged that both her family and Larry's family lived in Hard Rock Chapter. (*Id*. at 88-89) Plaintiff was not sure why she was not listed as a resident of her mother's home when her mother was interviewed by the Enumerators. (*Id*. at 89-90)

The IHO found that Plaintiff was "not a credible witness about her relationship with Larry Yazzie or her residence during 1974 and 1975." (Doc. 12 at 145) The IHO stated that Plaintiff "testified about her education, about forming a relationship with Larry Yazzie, about marrying Larry Yazzie, about having children with Larry Yazzie, about traveling to Mississippi with Larry Yazzie, and about staying at her mother's house." (*Id*.) Although the IHO recognized that Plaintiff claimed "that the relationship with Larry Yazzie was marred by abuse and that they were estranged" and that Plaintiff and her first son lived "at her mother's house in Hardrock" on the HPL on December 22, 1974, the IHO found both of Plaintiff's claims non-credible. (*Id*. at 147)

Where the IHO discounted Plaintiff's credibility, the IHO was required to provide "'specific, cogent reasons'" that were not "'based on speculation and conjecture.'" *Beam*, 624 F.Supp.3d at 1077 (quoting *Shire*, 388 F.3d at 1295); *see also Tsosie*, 771 Fed. Appx.

at 426-27 (conclusory statements insufficient for adverse credibility finding).

The IHO did not support his credibility finding for Plaintiff with "specific, cogent reasons" that were not "based on speculation and conjecture." *Beam*, 624 F.Supp.3d at 1077. Plaintiff having two children with Larry Yazzie, marrying Larry Yazzie in 1973, and traveling to Mississippi with Larry Yazzie are not incompatible with Plaintiff's testimony that she lived primarily at her mother's HPL home. The IHO's credibility finding did not recognize that Plaintiff testified that she only occasionally visited Larry for a few days, that Larry did not come to the hospital for the births of Plaintiff's first and second child and only visited Plaintiff a month or two after the birth of each child; nor does the IHO's finding recognize Plaintiff's testimony that Larry left Plaintiff and their first child in Mississippi, causing Plaintiff's stepfather to send Plaintiff money to return home. (Doc. 12 at 81-88)

The IHO also found that Plaintiff "began living at Larry's family's residence on the NPL" after traveling to Mississippi, but no witness testified that Plaintiff primarily lived with Larry Yazzie during the relevant time period. Moreover, no evidence in the record reflects that Plaintiff visited Larry Yazzie for more than a few days at a time. Plaintiff's testimony that she occasionally stayed with Larry Yazzie for a few days and happened to be at Larry's home while the BIA Enumerators visited is not inconsistent with Plaintiff's testimony that her primary residence was at her mother's home on the HPL. *C.f. Begay v. Office of Navajo & Hopi Indian Relocation*, No CV-20-08102, 2021 WL 4247919, at *4 (D. Ariz. Sept. 17, 2021) ("IHO may adequately find a lack of credibility based on internal inconsistencies in a witness's testimony"). Nor is Plaintiff's testimony non-credible "based on the totality of the record." *Id*. Plaintiff's witnesses at the IHO hearing, including her stepfather, mother, and sister, testified that Plaintiff lived with her mother and stepfather after the birth of her first child, rarely visited Larry Yazzie, moved to Mississippi with Larry in 1974, and returned to the HPL to live with her mother and stepfather after Larry Yazzie left Plaintiff in Mississippi. (Doc. 12 at 93-96, 97-98, 101-02)

In sum, the IHO's adverse credibility finding for Plaintiff was not supported by substantial evidence of record, and the IHO's error was not harmless. *See Ben v. Office of*

1    *Navajo & Hopi Indian Relocation*, No. CV-22-08032-PCT-SPL, 2023 WL 2140462 (D.

2    Ariz. Feb. 21, 2023). The IHO erred.

3                    *b.  Howard Begay's Testimony*

4            At the IHO hearing, Plaintiff's stepfather, Howard Begay, testified that he first met

5    Plaintiff in 1973 when she came to his home in Teasyahto. (*Id*. at 92) At the time, Plaintiff

6    had returned from school in Utah and was pregnant, but the father of the child was not with

7    Plaintiff. (*Id*. at 92-93) Howard Begay testified that after the birth of Plaintiff's first child

8    in 1973, Plaintiff lived with him and Plaintiff's mother. (*Id*. at 93) Although Plaintiff

9    occasionally went to see Larry and his family, Howard Begay stated that Plaintiff "was

10   being abused a lot." (*Id*.) Howard Begay testified that in 1974 Plaintiff helped around the

11   house and with ceremonies; he testified that later in 1974 Plaintiff went to Mississippi with

12   her boyfriend and the first child. (*Id*. at 94) After a few months, Plaintiff told Howard

13   Begay that her boyfriend had left her in Mississippi, and Howard Begay sent Plaintiff

14   money for a bus ticket to return home. (*Id*.) In 1975, Plaintiff was still living with Howard

15   Begay and Plaintiff's mother, and Howard stated that Plaintiff "never did spent [*sic*] much

16   time with [Larry] because of her being abused." (*Id*. at 95) After Plaintiff had her second

17   child and spent some time in Salt Lake City in 1975, Plaintiff returned to Howard Begay

18   and her mother's home, where she took care of her children and helped out around the

19   house. (*Id*. at 95) Plaintiff lived with Howard Begay and her mother until 1980, and Howard

20   Begay testified that his house was Plaintiff's primary home. (*Id*. at 95-96)

21           The IHO stated that Howard Begay "testified about meeting [Plaintiff] in 1973 when

22   she was pregnant, he testified about [Plaintiff's] travel to Mississippi with her 'boyfriend'

23   and son, he testified about [Plaintiff] staying with Larry Yazzie 'once in a while', and he

24   testified that Larry Yazzie abused [Plaintiff] so [Plaintiff] spent more time at his home."

25   (Doc. 12 at 145-46) The IHO found that Howard Begay was "not a credible witness about

26   [Plaintiff's] relationship with Larry Yazzie or about the amount of time [Plaintiff] stayed

27   at the Howard Begay house in Hardrock during 1974 and 1975." (*Id*.)

28           While an IHO's credibility findings generally receive substantial deference, "'an

- 15 -

adverse credibility finding must be supported by specific, cogent reasons, and cannot be based on speculation and conjecture.'" *Beam*, 624 F.Supp.3d at 1077. Here, the IHO did not support his credibility findings for Howard Begay with "specific, cogent reasons[.]" *Id.* Howard Begay's testimony that Larry Yazzie left Plaintiff in Mississippi, that Howard Begay paid for Plaintiff to return home, that Plaintiff occasionally stayed with Larry Yazzie but was being abused, and that Plaintiff mostly lived at Howard and Margie Begay's home supports Plaintiff's testimony regarding her relationship with Larry Yazzie and the time Plaintiff spent at Howard Begay's house. Howard Begay's testimony is consistent with Plaintiff, her mother, and her sister's testimony that Plaintiff spent little time with Larry and was being abused. (*See* Doc. 12 at 81-88, 98-99, 102) Howard Begay's testimony is also consistent with the testimony of Plaintiff, her mother, and her sister that Plaintiff primarily lived with her mother and Howard Begay after the birth of Plaintiff's first child. (*Id.* at 80-82, 97-98, 101-02) The IHO's adverse credibility finding about Howard Begay's testimony was not supported by substantial evidence.

### c. Evelyn Begaye's Testimony

At the IHO hearing, Plaintiff's sister Evelyn Begaye testified that although she attended boarding school through eighth grade, when she was home during the summer, she stayed with her parents and Plaintiff. (*Id.* at 97-98) Evelyn Begaye stated that Plaintiff was at her home on and off and that Plaintiff was home with Plaintiff's first baby a lot following the baby's birth in 1973. (*Id.* at 98) Evelyn Begaye remembered that Larry hit Plaintiff and that Plaintiff had a cut on her eye from Larry. (*Id.* at 99) Evelyn Begaye did not remember whether Plaintiff married Larry, got a marriage license in Chinle, or divorced because Evelyn was eight years old at the time. (*Id.*)

The IHO stated that Evelyn Begaye "testified about seeing [Plaintiff] at home 'off and on', she testified that [Plaintiff's] relationship with Larry Yazzie was 'off and on' due to abuse, and she testified that [Plaintiff] and Larry Yazzie never married but [Plaintiff referred to him as her 'boyfriend'." (Doc. 12 at 146) The IHO found that Evelyn Begaye was not credible "[t]o the extent that Evelyn Begaye's testimony is to corroborate

[Plaintiff's] and her step-father's testimony about [Plaintiff's] relationship with Larry Yazzie[.]" (*Id*.) Evelyn Begaye's testimony that Plaintiff was often home with her first baby in 1973-onward, that Plaintiff was with Howard and Margie Begay when Evelyn Begaye returned from school during the summer, and that Larry Yazzie abused Plaintiff tends to support Plaintiff's testimony regarding her residence on the HPL and her lack of a close and stable relationship with Larry Yazzie. The IHO's adverse credibility finding about Evelyn Begaye's testimony was not supported by substantial evidence.

### d.  Margie Begay's Testimony

At the IHO hearing, through an interpreter, Plaintiff's mother Margie Begay testified that she accompanied Plaintiff to the hospital for the birth of her first child, that she and Plaintiff caught a ride to the hospital, and that no one else went to the hospital with them. (*Id*. at 101) Afterward, Plaintiff stayed with Margie Begay and her husband in Teasyahto. (*Id*. at 101-02) Margie Begay stated that the father of Plaintiff's first child did not come around much and eventually "just quit coming around." (*Id*. at 102) Although Plaintiff sometimes took her children to their father's home, Margie Begay testified that Plaintiff and her children mostly stayed with Margie. (*Id*.) Margie Begay remembered interviewers from the BIA coming to her home, but she did not remember them asking who lived at the home. (*Id*. at 102-03)

The IHO did not make any credibility finding for Margie Begay. Where an IHO "fails to provide any reasons for a negative credibility finding, 'a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable [IHO], when fully crediting the testimony, could have reached a different [eligibility] determination.'" *Ben*, 2023 WL 2140462, at *4. Margie Begaye's testimony that she alone accompanied Plaintiff to the hospital for the birth of Plaintiff's first child, that Plaintiff primarily stayed with her and Howard Begay, and that Larry Yazzie occasionally came to visit Plaintiff at Margie's house but then stopped visiting supports Plaintiff's testimony, her stepfather's testimony, and her sister's testimony regarding Plaintiff's residence at Margie and Howard Begay's HPL home during the relevant time period. Moreover,

although Plaintiff was not included in the Enumeration at Margie Begay's HPL home, Margie Begay testified that she did not remember BIA interviewers asking who lived at her home. (Doc. 12 at 102-03) If an IHO were to fully credit Margie Begay's testimony, the Court cannot "confidently conclude that no reasonable [IHO…] could have reached a different [eligibility] determination." *Ben*, 2023 WL 2140462, at *4. Accordingly, the IHO erred in discounting Margie Begay's testimony, and the error was not harmless.

### 2. Substantial Evidence

#### a. Enumeration

Plaintiff argues that the IHO relied solely on the Enumeration in finding that Plaintiff was not an HPL resident on December 22, 1974. (Doc. 17 at 9-14) Citing previous decisions in this Court and the Ninth Circuit, Plaintiff argues that the Enumeration is unreliable and that ONHIR has previously certified applicants for benefits despite contradictory Enumeration evidence. (*Id.*) (citing *Ray*, 2023 WL 4761789, at *7, and Walker, 728 F.2d at 1279-80.)

In the IHO's decision, the IHO determined that on December 22, 1974, Plaintiff "was a legal resident of Hardrock Chapter, in an area partitioned for the use of the Navajo Indians, as she was married to Larry Yazzie and they had a son together who lived with them. Applicant was enumerated by the BIA at that location." (Doc. 12 at 146) In addition to determining that Plaintiff "lived with Larry Yazzie where she was found by the BIA enumerators[,]" the IHO determined that Plaintiff was not included with her mother's HPL Enumeration:

> when given an opportunity during enumeration to support [Plaintiff's] residence at Howard Begay's home in HPL Hardrock Chapter, [Plaintiff's] mother demurred and, although she included 5 of [Plaintiff's] siblings as residents there, [Plaintiff] and her son were omitted. Surely, if [Plaintiff's] presence at Howard Begay's home was so fundamental and ongoing, such an oversight could not have occurred.

(*Id.* at 147-48)

To determine residency, ONHIR considers a person's "intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22,277-78; *Charles*, 774 Fed. Appx. at 390. An applicant's manifestations of intent may include ownership of livestock,

ownership of improvements, grazing permits, livestock sales receipts, homesite leases, public health records, medical and hospital records, trading post records, school records, military records, employment records, mailing address records, banking records, driver's license records, tribal and county voting records, homeownership or rental off the disputed area, BIA census data, information obtained by certification field investigation, Social Security Administration records, marital records, court records, records of birth, the Joint Use Area roster, and any other relevant data. *Id.* An applicant "who was, on December 22, 1974, away from the land partitioned to the Tribe of which he/she is not a member may still be able to prove legal residency." 49 Fed. Reg. 22,277.

The BIA Enumeration can be *prima facie* evidence of residency that a plaintiff has the burden to disprove. *Sands*, 2023 WL 8281705, at *4. However, this Court and the Ninth Circuit have recognized that the BIA Enumeration is "unreliable" and is "not, on its own, sufficient evidence to establish residency or non-residency." *Ray*, 2023 WL 476189, at *7; *Walker*, 728 F.2d at 1279-80. The excerpt from the *Navajo Hopi Indian Relocation Commission Report and Plan* attached as Exhibit II to Plaintiff's motion for summary judgment further describes the difficulty of accurately locating and enumerating the residents of the NPL and HPL due to language difficulties, geographical barriers, individuals' reluctance to speak with enumerators, and inadequate data from prior studies. (Doc. 17-2)

Here, the IHO did not rely entirely on the Enumeration. Nevertheless, after finding that Plaintiff was enumerated at Larry Yazzie's NPL home, the IHO made findings regarding Plaintiff's residence and relationship with Larry Yazzie that are contrary to the hearing testimony of Plaintiff and her witnesses, which was the remainder of the evidence. The Enumeration was the only evidence that contradicted the unwavering witness testimony that Plaintiff did not live primarily with Larry Yazzie and that Plaintiff and Larry Yazzie were not close. (*See* Doc. 12 at 157, 159) Although the Enumeration constituted *prima facie* evidence of non-HPL residency, in light of the uniform testimonial evidence contradicting the Enumeration, the IHO did not provide a sufficient explanation for

discounting the evidence of record that rebutted the NPL Enumeration.

Plaintiff stated in her 2009 application for relocation benefits that she lived with her parents "[s]even miles southwest of Dennebito trading post on the 'HPL'" on December 22, 1974. (*Id.* at 24) The application for relocation benefits contained a space for Plaintiff to explain why she was not living on the HPL if she "had a residence on what became the HPL on December 22, 1974, but w[as] not actually living in that residence on that day[.]" (*Id.*) In response, Plaintiff stated she "was working on and off outside the HPL but always came home to [her] parents. In December 1974 [she] was living there." (*Id.*) During an interview associated with her application for relocation benefits, Plaintiff stated that she went back and forth between staying with her mother and visiting her boyfriend for 2-3 days at a time. (*Id.* at 44-45) Further, in addition to her own testimony at the IHO hearing, Plaintiff presented three witnesses who testified that Plaintiff lived with her mother and stepfather on the HPL. (*Id.* at 79-103) Plaintiff testified that she happened to be visiting Larry Yazzie's NPL home on the day the BIA Enumerators arrived, that she did not live at Larry Yazzie's home at that time, and that she understood the BIA Enumerators to be doing a "Census count, or something." (*Id.* at 88) The record contains no interview notes from the BIA Enumerator interview at Larry Yazzie's home. Moreover, although the IHO determined that "if [Plaintiff's] presence at Howard Begay's home was so fundamental and ongoing," Plaintiff's mother would not have omitted Plaintiff from the BIA Enumeration, Plaintiff's mother testified that she did not remember the BIA Enumerators asking about who lived at her home. (*Id.* at 102-03) The record contains no interview notes from the BIA Enumerators' interview at Margie and Howard Begay's HPL home.

Further, the record does not support the IHO's determination that after Plaintiff left Mississippi, when Plaintiff "returned to the Reservation in 1974, she lived with Larry Yazzie where she was found by the BIA enumerators." (*Id.* at 147) Plaintiff and her stepfather both testified that Plaintiff lived with her mother and stepfather on the HPL after returning from Mississippi. (*Id.* at 84-85, 94-95) Plaintiff's mother testified that Plaintiff mostly lived with Plaintiff's mother and stepfather, although Plaintiff sometimes took her

children to see Larry Yazzie. (*Id.* at 101-02) Consistent with her mother's testimony, Plaintiff also testified that she occasionally visited Larry Yazzie for a few days after returning from Mississippi. (*Id.* at 84-85) Neither witness testimony nor any other evidence in the record reflects that Plaintiff primarily lived with Larry Yazzie after returning from Mississippi in 1974. *C.f. Fuson v. Office of Navajo & Hopi Indian Relocation*, No. CV-21-08237-PCT-DJH, 2023 WL 2540241, at *6 (D. Ariz. Mar. 16, 2023) (affirming IHO finding where IHO relied both on Enumeration and supporting testimonial evidence).

Given the consistent testimony from Plaintiff and three additional witnesses regarding Plaintiff's residence on the HPL in 1974, the record contains substantial evidence that Plaintiff manifested an intent to maintain her legal residence on the HPL on December 22, 1974. 49 Fed. Reg. 22,277-78; *Charles*, 774 Fed. Appx. at 390. In contrast, the IHO's finding regarding the Enumeration is not supported with substantial evidence and is contrary to the testimonial evidence before the IHO. As such, the IHO's decision was arbitrary and capricious.

*b.  Plaintiff's Relationship with Larry Yazzie*

Plaintiff also argues that the IHO did not provide substantial evidence to support a finding that Plaintiff had a close relationship with Larry Yazzie. (Doc. 17 at 14-16) Plaintiff argues that the IHO relied on Plaintiff and Larry's marriage license and two children together to find that the relationship was stable. (*Id.*) Plaintiff asserts that the IHO dismissed testimony from Plaintiff, her stepfather, her mother, and her sister that Plaintiff's relationship with Larry was not good. (*Id.*)

In his decision, the IHO determined that Plaintiff was not credible insofar as Plaintiff claimed that her relationship with Larry was "marred by abuse and that they were estranged." (Doc. 12 at 147) The IHO found that:

> While it is easy to dismiss Larry Yazzie's participation as a husband and father by claiming that he wasn't around, the objective evidence clearly shows a close relationship between the two of them that began in Brigham City, Utah and continued beyond 1975. [Plaintiff] became pregnant by Larry Yazzie in early 1973, she gave birth at the end of October 1973, she declared in her relocation application that she and Larry Yazzie had married in July 1973, she and Larry Yazzie went to Mississippi together and, when [Plaintiff] returned to the Reservation in 1974, she lived with Larry Yazzie where she

was found by the BIA enumerators. They then had another baby in June 1975 (if the baby was full term, [Plaintiff] became pregnant in September 1974).

(Doc. 12 at 147-48)

In light of the testimonial evidence presented at the IHO hearing, Plaintiff having married Larry Yazzie in 1973, Plaintiff having two children by Larry Yazzie, and Plaintiff's occasional visits to Larry Yazzie's home are not clear evidence of a close relationship between Plaintiff and Larry Yazzie. Plaintiff testified that Larry Yazzie did not attend the births of Plaintiff's first or second child; that Larry Yazzie did not visit Plaintiff's children until a month after their births; that Larry Yazzie left Plaintiff in Mississippi, with Plaintiff needing her stepfather to send Plaintiff money for her return home; and that Plaintiff only occasionally stayed with Larry Yazzie for a few days at a time. (Doc. 12 at 81-88) Evelyn Begaye and Howard Begay testified that Plaintiff did not see Larry Yazzie often and that Plaintiff was being abused by Larry Yazzie. (*Id*. at 92-95, 98-99) Margie Begay also testified that Larry Yazzie eventually visited Plaintiff and her children at Margie and Howard Begay's home. (Doc. 12 at 102) Further, the IHO found that in order to have given birth in June 1975, Plaintiff must have become pregnant with her second child with Larry Yazzie around September 1974. (*Id*. at 147-48) If Plaintiff moved to Mississippi in early or mid-1974 and returned to her parents' house a few months later, Plaintiff's second pregnancy in September 1974 is not inconsistent with the testimony of Plaintiff, her mother, and her stepfather that Plaintiff occasionally visited Larry Yazzie for a few days after returning from Mississippi. (*Id*. at 84-85, 95, 102) Indeed, even one visit by Plaintiff to Larry Yazzie's home would have been sufficient.

ONHIR argues that evidence supports Plaintiff having a close relationship with Larry Yazzie, such as Larry Yazzie moving to Mississippi with Plaintiff, Plaintiff not having her own residence on the HPL, and Plaintiff's own testimony that she and Larry Yazzie obtained a marriage license and traveled to Mississippi. (Doc. 30 at 4-5) ONHIR asserts that Plaintiff contradictorily labels her testimony about her difficult relationship with Larry Yazzie as "robust," whereas Plaintiff's testimony about marrying and moving to Mississippi with Larry Yazzie is "thin." (*Id*. at 5) However, Plaintiff's testimony that

- 22 -

her relationship with Larry Yazzie was not close is not contradictory to Plaintiff's testimony that she married and temporarily moved to Mississippi with Larry Yazzie during her pregnancy in 1973. Marriage during pregnancy and an out-of-state move are not substantial evidence of a close relationship in light of unwavering testimony from four witnesses that Plaintiff's relationship with Larry Yazzie was abusive, that Plaintiff did not live with Larry Yazzie, that Larry Yazzie did not accompany Plaintiff to the births of their children, and that Larry Yazzie left Plaintiff in Mississippi without resources. Moreover, despite ONHIR's assertion in its reply in support of its cross-motion for summary judgment that Plaintiff did not have her own residence on the HPL and lived with her parents, there is no requirement that Plaintiff have her own home on the HPL, nor did the IHO use such a finding to support his decision. (*See* Doc. 30 at 4) ONHIR itself recognizes in its cross-motion for summary judgment that "ONHIR generally has not required an applicant to demonstrate ownership of a dwelling but has instead focused on the applicant demonstrating that he or she has maintained the HPL homesite as his or her legal residence[.]" (Doc. 21 at 10)

In sum, the IHO's findings regarding Plaintiff's relationship with Larry Yazzie are not supported by substantial evidence. *See Orteza*, 50 F.3d at 749 ("Substantial evidence is more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion.") To the contrary, substantial evidence exists in the record that Plaintiff's relationship with Larry Yazzie was not close, and the IHO failed to adequately consider testimony from Plaintiff and additional witnesses regarding Plaintiff's relationship with Larry Yazzie. The IHO's conclusion that Plaintiff's relationship with Larry Yazzie was close is implausible such that it "could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

Given all of the above, the IHO's decision was arbitrary and capricious.

## IV.   REMAND

Because the IHO failed to satisfy the arbitrary and capricious and substantial

evidence standards, this Court cannot uphold the IHO's decision. ONHIR is correct that "[i]n administrative review cases, the district court sits as an appellate tribunal" such that this Court "may not substitute its judgment for that of the agency. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43." (Doc. 21 at 15) When "the record before the agency does not support the agency action, […] the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Begay v. Office of Navajo & Hopi Indian Relocation*, No. CV-16-08221-PCT-DGC, 2017 WL 4297348, at *4 (D. Ariz. Sept. 28, 2017); *UOP v. United States*, 99 F.3d 344, 351 (9th Cir. 1996). In rare circumstances, this Court may find "that the record clearly demonstrates an applicant's eligibility for relocation benefits." *Begay*, 2017 WL 4297348, at *4.

Here, remand for further proceedings is warranted. Remand allows the IHO to further assess the evidence of record, including testimony from Plaintiff and Plaintiff's mother, stepfather, and sister. Further, upon remand, Plaintiff may have the opportunity to present to the IHO Attachments I, II, III, and IV to Plaintiff's motion for summary judgment. The Court finds that Plaintiff has not shown the rare circumstances required for this Court to award relocation benefits, and the Court remands for further proceedings. *C.f. Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) ("where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed" there is no purposes for remand).

## V.   CONCLUSION

In sum, the IHO's decision was arbitrary and capricious and was not supported by substantial evidence. The Court will remand this matter for proceedings consistent with this Order.

Accordingly,

**IT IS ORDERED reversing** the final decision of ONHIR dated June 19, 2017.

**IT IS FURTHER ORDERED granting** Plaintiff's Motion for Summary Judgment (Doc. 17) as set forth herein.

**IT IS FURTHER ORDERED denying** Defendant ONHIR's Cross-Motion for

Summary Judgment (Doc. 21).

**IT IS FURTHER ORDERED remanding** this matter to ONHIR for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly and terminate this action.

Dated this 25th day of June, 2024.

_____
Honorable Deborah M. Fine
United States Magistrate Judge